DECISION AND JUDGMENT ENTRY
{¶ 1} Sara Mick ("Mother"), appeals the Washington County Court of Common Pleas, Juvenile Division, decision granting custody of her biological children to their paternal aunt, Tina Hurst. Mother contends that the trial court erroneously excluded evidence relating to her suitability as a parent, and erroneously permitted evidence relating to her unsuitability as a parent. Because we find that the trial court did not abuse its discretion in admitting and excluding evidence, and because the evidentiary decisions challenged by Mother did not prejudice her, we disagree. Mother also contends that the trial court's judgment is against the manifest weight of the evidence. Because the record contains some competent, credible evidence supporting the trial court's finding that Mother is not a suitable parent for the children, we disagree. Accordingly, we overrule each of Mother's assignments of error, and we affirm the judgment of the trial court.
 I.
{¶ 2} Mother and Randy Mick, Sr. ("Father"), divorced in July of 2002. The divorce decree issued by the Washington County Court of Common Pleas awarded custody of the three minor children to Mother. In November of 2002, the Belmont County Department of Children Services ("BCDCS") removed the children from Mother's home. The Belmont County Court of Common Pleas, Juvenile Division, granted emergency custody to BCDCS in December of 2002. The Belmont court found the children dependent, and placed them in the legal custody of Father, under the protective supervision of BCDCS.
 {¶ 3} The Belmont court transferred the case to the Washington County Court of Common Pleas, Juvenile Division. The court held an annual review hearing and a hearing on Mother's motion for custody on December 15, 2003. The court denied Mother's motion, and continued legal custody in Father, under the protective supervision of Washington County Children Services ("WCCS").
 {¶ 4} At the next six-month review, the court placed the children in the temporary custody of Hurst, under the protective supervision of WCCS. The court granted Father visitation with the children as agreed upon between Father and Hurst. The court granted Mother supervised visitation with the two younger boys, and ordered that a trained mental health professional facilitate such visits. The court ordered that no visitation take place between Mother and her eldest son until such time as his counselor deems visitation appropriate.
 {¶ 5} On January 24, 2005, the trial court conducted a hearing on motions for custody filed by Mother, Father, and Hurst. At the request of WCCS, the court terminated WCCS's protective supervision of the children. The court determined that the purpose of its hearing was to determine a modification of custody, and therefore stated that it would not hear evidence relating to incidents prior to the December 15, 2003 custody hearing. In particular, the court disallowed the maternal grandmother's proffered testimony that the children were always appropriately cared for while in Mother's custody prior to intervention by BCDCS, and that they displayed inappropriate behavior each time they returned from a visit with Father.
 {¶ 6} WCCS case worker Mary Ann Rollins opined that Mother is not a suitable parent, and recommended that the children remain with Hurst. Specifically, Rollins testified that at the WCCS case plan meeting in August of 2004, Mother tore up the case plan and stormed out within five minutes. Rollins also testified that, because Mother did not consistently take her pills, WCCS was trying to obtain funding so that Mother would receive her psychiatric medication via periodic injections. Rollins stated that the children's relationship with Mother is so strained that they do not even want to continue visitation with her, let alone live with her. Finally, Rollins related that the children are happy and well-adjusted at Hurst's home.
 {¶ 7} In his testimony, Father acknowledged that he does not currently have adequate housing to care for the children. He testified that the children were unhappy and performed poorly at school when they lived with Mother. Father requested that the children remain with Hurst until he is able to care for them. He withdrew his motion for custody during closing arguments.
 {¶ 8} Mother testified that she is a suitable parent and that she currently has a one-bedroom apartment, but she spends most of her time at her mother's or at her boyfriend's home. She testified that she can get a larger apartment immediately if the court returns the children to her custody.
 {¶ 9} The court permitted Hurst to cross-examine Mother about her psychiatric hospitalization and diagnosis with bipolar and personality disorders. Additionally, the court permitted Hurst to question Mother regarding her conviction for domestic violence and her subsequent convictions for violations of a temporary protection order. Mother objected to both lines of questioning, on the grounds that they related to matters occurring prior to the December 15, 2003 custody modification. The court permitted the testimony for purposes of determining visitation and suitability.
 {¶ 10} The children's guardian ad litem, Denyse Fordham, filed a report and testified that she does not recommend granting custody of the children to Mother. Specifically, Fordham testified that Mother has no relationship with the oldest child, and her relationship with her two younger children is so strained that she does not believe the boys can feel comfortable and safe with Mother. Fordham stated that Mother's relationship with the children could be developed with visitation. Fordham also recommended that the court begin to allow Mother some unsupervised visitation, such as a four-hour visit to the mall, with a restriction prohibiting use of a motor vehicle during the visitation time period.
 {¶ 11} The court found by a preponderance of the evidence that both parents are unsuitable at this time, and that an award of custody to either parent would be detrimental to the children. Therefore, the court concluded that it would be in the best interest of the children to place them in Hurst's legal custody.
 {¶ 12} Mother appeals, asserting the following assignments of error: Washington App. No. 05CA23 6
 {¶ 13} "I. THE JUDGMENT IS NOT SUSTAINED BY THE EVIDENCE AND IS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE.
 {¶ 14} II. THE COURT ERRED IN DENYING APPELLANT THE RIGHT TO INTRODUCE TESTIMONY RELATING TO HER SUITABILITY AND FITNESS AS A PARENT WHICH OCCURRED PRIOR TO A DECEMBER 2003 HEARING ON TEMPORARY CUSTODY.
 {¶ 15} III. THE COURT ERRED IN ADMITTING INADMISSIBLE EVIDENCE OFFERED BY THE PLAINTIFF TO WHICH OBJECTION WAS MADE BY THE DEFENDANT."
 II. {¶ 16} Mother's second and third assignment of errors relate to the court's decisions regarding the admission or exclusion of evidence. A trial court has broad discretion in the admission or exclusion of evidence, and so long as the court exercises its discretion in line with the rules of procedure and evidence, we will not reverse its judgment absent a clear showing of an abuse of discretion with attendant material prejudice to defendant. Rigby v. Lake Cty. (1991), 58 Ohio St.3d 269, 271;State v. Hymore (1967), 9 Ohio St.2d 122, certiorari denied (1968),390 U.S. 1024. In particular, decisions involving the admission or exclusion of evidence on relevancy grounds are within the discretion of the trial court and will not be disturbed absent a clear abuse of discretion. Renfro v. Black (1990), 52 Ohio St.3d 27. A finding that a trial court abused its discretion implies that the court acted unreasonably, arbitrarily or unconscionably. Blakemore v. Blakemore
(1983), 5 Ohio St.3d 217, 219. When applying the abuse of discretion standard, we may not substitute our judgment for the trial court's judgment. Berk v. Matthews (1990), 53 Ohio St.3d 161, 169.
 {¶ 17} In order to be admissible, evidence must be relevant. See Evid.R. 402. "Relevant evidence" is any evidence that has the "tendency to make the existence of a fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Evid.R. 401. "Generally speaking, the question of whether evidence is relevant is ordinarily not one of law but rather one * * * based on common experience and logic." State v. Lyles (1989),42 Ohio St.3d 98, 99. Even relevant evidence may be excluded on the grounds of remoteness when the evidence has little probative value. Evid. R. 403(B); Hamm v. McCarty (1988), 61 Ohio App.3d 623, 627. Moreover, "[n]o error in * * * the admission * * * of evidence * * * is ground for granting a new trial or for setting aside a verdict * * * unless * * * such action appears to the court inconsistent with substantial justice." Civ.R. 61; Johnson v. Cassens Transport Co.,158 Ohio App.3d 193, 199, 2004-Ohio-4011, at ¶ 22.
 {¶ 18} Mother contends that the trial court erred in preventing the children's maternal grandmother from testifying that the children were always appropriately cared for while in Mother's custody, because this evidence is relevant to determining Mother's suitability as a parent. The trial court excluded the evidence, finding that it was not relevant to a custody modification because it occurred prior to the last custody modification. The court apparently later realized that the standard for determining whether to grant custody to a non-parent differs from the simple "change of circumstances" test applied to custody modification between parents. The court then permitted Hurst to introduce evidence of Mother's psychiatric hospitalization and her convictions for domestic violence and violating a restraining order.
 {¶ 19} The probative value of the maternal grandmother's proffered testimony is very low. The fact that Mother may have been a suitable parent to the children at one time does not negate the extensive evidence that Mother is not currently fit to parent her children. In particular, the evidence shows that Mother is not bonded with the children, and that the eldest child's counselor recommends that he have no contact with Mother. Additionally, the evidence shows that Mother has not provided any economic support to her children in over a year, that she currently does not have a suitable home for the children, and that she has a history of becoming mentally unstable because she fails to take her psychiatric medication consistently.
 {¶ 20} Moreover, even if we assume that the trial court erred in excluding the maternal grandmother's testimony, the exclusion of the evidence was, at most, harmless error. Again, based on the extensive evidence regarding Mother's unsuitability as a parent at the time of the hearing, we can not find that the exclusion of evidence regarding Mother's parenting skills several years prior to the custody hearing caused Mother prejudice.
 {¶ 21} Likewise, we cannot say that the trial court abused its discretion with its later decision to permit Hurst to introduce evidence regarding Mother's psychiatric hospitalization and convictions for domestic violence and violating a temporary restraining order. The court permitted only limited evidence regarding Mother's psychiatric hospitalization, which provided relevant background to illustrate the importance of the evidence that Mother currently does not consistently take her medication. Additionally, while it appears from the record that Mother's convictions occurred prior to the December 2003 custody modification hearing, the convictions were not as remote in time as Mother's proffered testimony regarding her skills as a custodial parent. We cannot say that the trial court abused its discretion in ruling that Mother's convictions are relevant to the suitability determination regardless of when they occurred.
 {¶ 22} Accordingly, we find that the trial court did not abuse its discretion in the admission or exclusion of evidence, and that, in any event, Mother did not suffer prejudice from the challenged evidentiary rulings. Therefore, we overrule Mother's second and third assignments of error.
 III. {¶ 23} In her first assignment of error, Mother contends that the trial court's judgment is not sustained by the evidence and is against the manifest weight of the evidence.
 {¶ 24} A natural parent's "desire for and right to `the companionship, care, custody, and management of his or her children'" is a fundamental interest far more precious than any property right.Lassiter v. Dept. of Social Svcs. (1981) 452 U.S. 18, 27, 101 S.Ct. 2153,68 L.Ed.2d 640. In Ohio, the general rule regarding original custody awards in disputes between the natural parents and a third-party is that "* * * parents who are `suitable' persons have a `paramount' right to the custody of their minor children unless they forfeit that right by contract, abandonment, or by becoming totally unable to care for and support those children." In re Perales (1977), 52 Ohio St.2d 89, 97, citing Clark v. Bayer (1877), 32 Ohio St. 299, 310. (Footnote omitted.) This test balances the welfare or "best interests" of the child with the parent's right to care for his or her child. "[P]arents may be Washington App. No. 05CA23 11 denied custody only if a preponderance of the evidence indicates abandonment, contractual relinquishment of custody, total inability to provide care or support, or that the parent is otherwise unsuitable that is, that an award of custody would be detrimental to the child." Perales at 98. By analyzing a parent's suitability, measured "* * * in terms of the harmful effect of the custody on the child, rather than in terms of society's judgment of the parent * * *," the welfare of the child receives priority in balancing the interests of the child and the parent. m {¶ 25} Pursuant to R.C. 2151.23(A)(2), the juvenile court has exclusive, original jurisdiction over the determination custody disputes between parents and non-parents. See In re Hockstok, 98 Ohio St.3d 238,2002-Ohio-7208, at ¶ 15; In re Daily, Athens App. No. 02CA31, 2003-Ohio-787, at ¶ 6. A trial court has broad discretion in resolving custody matters and should be afforded the utmost respect. Reynolds v.Goll (1996), 75 Ohio St.3d 121, 124. Therefore, we will not reverse a trial court's custody determination unless it involves an abuse of discretion. Bechtol v. Bechtol (1990), 49 Ohio St.3d 21, 23. Abuse of discretion connotes more than an error in judgment; it implies that the trial court's attitude was arbitrary, unreasonable, or unconscionable.Blakemore at 219.
 {¶ 26} Here, the trial court found that Mother is not a suitable parent to the children. Specifically, the court found that Mother is not bonded to the children. The record reveals that the oldest child's counselor believes that visitation with Mother is harmful to the child, and that the two younger boys do not feel safe in Mother's custody. The court also found that Mother is unemployed and on welfare, though she is capable of working. Mother has not made any financial contribution to the children in over two years, and has not even given them Christmas presents. She suffers from mental illness, yet she has a history of failing to take the medication needed to give her mental stability and she refuses to attend the counseling recommended by WCCS. She lives in a one-bedroom apartment, and spends most of her time at her boyfriend's house or her mother's house. Thus, Mother has not acquired suitable housing for the children.
 {¶ 27} Based upon the foregoing, the trial court could reasonably have concluded that Mother does not have an established relationship with the children and does not possess the necessary mental and financial stability to be a suitable parent to her three children.
 {¶ 28} In sum, we find ample competent, credible evidence in the record to support the trial court's finding that Mother is unsuitable to have custody of the children, and that an award of custody to Mother would be detrimental to the children's well being. Accordingly, we overrule Mother's first assignment of error and affirm the judgment of the trial court.
JUDGMENT AFFIRMED.
 JUDGMENT ENTRY
It is ordered that the JUDGMENT BE AFFIRMED and that Appellees recover of Appellant costs herein taxed.
The Court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this Court directing the Washington County Court of Common Pleas, Juvenile Division, to carry this judgment into execution.
Any stay previously granted by this Court is hereby terminated as of the date of this entry.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 for the Rules of Appellate Procedure.
Exceptions.
Abele, P.J.: Concurs in Judgment Only.
Kline, J.: Concurs in Judgment and Opinion.